*R. A. Riley*, *N. B. Taylor* and *J. Coburn*, for the state.

---

## Hubbs and Others *v.* Bancroft and Others.

Whether a deed made upon a valuable consideration is fraudulent or not, is, under the R. S. 1843, a question of fact and not of law.

A debtor in embarrassed circumstances and capable of contracting, may sell his property, for the purpose of discharging his debts, for such consideration as he may choose, and if there be nothing illegal in the transaction, it will stand as against his creditors.

A creditor can obtain a lien by filing his bill in equity only where no lien    Nov. Term,
has been gained or can be acquired at law.                                            1853.

HUBBS
v.
ERROR to the *Jefferson* Circuit Court.                                        BANCROFT.

DAVISON, J.—Bill in chancery by the defendants in error    *Wednesday,*
against the plaintiffs in error.   The object of the suit was    *November 30.*
to subject a part of lot No. 61, in the city of *Madison*, to
the payment of a judgment at law against *Benjamin* and
*Joseph Hubbs*.   *Benjamin Hubbs*, *Charles W. Basnet* and
*Charles Fox* answered.   The other defendants, viz., *David
H. White*, *Edward Warner* and *Joseph Warner*, (who were
partners under the name of *David H. White & Co.*) *Sam-
uel Bespham* and *James F. D. Lanier*, were defaulted.

The facts are, substantially, as follows:

On the 6th of *March*, 1836, *Basnet*, by deed in fee, con-
veyed the lot in question to *Benjamin Hubbs*, who was his
son-in-law, the husband of his only child.   The property
conveyed by this deed was a mere gift.   In 1841, pre-
vious thereto, and up until 1844, *Benjamin* and *Joseph
Hubbs* were partners in the dry-goods business in *Madi-
son*.   *Joseph* was a man of limited means, and gave to
the concern no credit.   *Benjamin* had an extensive credit
in the eastern cities; and the firm had contracted a large
amount of indebtedness.   In *April* and *September*, 1841,
they executed three notes to the complainants, who, at
the *September* term, 1846, recovered a judgment in the
*Jefferson* Circuit Court on a balance then due on said
notes, for 2,765 dollars, upon which an execution was
issued and returned "*nulla bona.*"   The present suit is
founded upon said judgment.

On the 1st of *September*, 1843, *Benjamin Hubbs* called
on *Basnet* and proposed to re-convey said lot to him for
the consideration of 1,060 dollars.   *Basnet* was at first
unwilling to accede to the proposition, but having become
satisfied that to do so would advance the interest of *Hubbs*,
he gave him 1,060 dollars, and took a conveyance.   At
this period the lot was worth 4,500 dollars.   When the
re-conveyance was made, *Hubbs* was largely indebted—
had become embarrassed and unable to meet his debts

promptly. *Basnet* knew of this embarrassment, but not the extent of it. He believed that the pressure on *Hubbs* was temporary, but that he was able to meet all the demands against him. *Hubbs* had suspended payment, but it appears that he thought his means sufficiently ample to enable him speedily to render full satisfaction to all his creditors. Within a short period after the lot was reconveyed, *Basnet* purchased of *B.* and *J. Hubbs* their entire stock of goods then on hand, at full value. In payment therefor, he gave them his promissory notes. These notes were used by *Hubbs* in paying their debts. The object of *Basnet* in making this purchase, as also that of the lot, appears to have been to enable *Hubbs* to pay all his debts at an early day. It was shown that one *William Delta*, on the 21st of *November*, 1843, recovered a judgment in the Circuit Court of the *United States* for the district of *Indiana*, against *B.* and *J. Hubbs*, for 1,303 dollars. This judgment was, on the 29th of *January*, 1844, duly assigned to said *Basnet*. On the 21st of *May*, 1844, *Atwood & Co.*, upon notes given in *April*, 1841, and in *October*, 1842, recovered a judgment, in the same Court, against said *B.* and *J. Hubbs*, for 1,566 dollars. This judgment was assigned to *James F. D. Lanier*, and upon it an execution was issued, and on the 29th of *January*, 1847, the lot in question was sold to said *Lanier* for 2,225 dollars, by the marshal for said district, who made him a deed. The amount for which the lot sold was one-half its appraised value. Afterwards, on the 22d of *February*, 1847, *Lanier*, for the consideration of 2,225 dollars, conveyed the lot to *Basnet*. It further appears that *Charles Fox*, on the 18th of *November*, 1844, upon a note dated *September* 8, 1841, recovered a judgment in said Court against *B.* and *J. Hubbs* for 1,835 dollars; that *Samuel Bespham*, on the 24th of *September*, 1844, upon a note given in *September*, 1841, obtained a judgment against them, in the *Jefferson* Circuit Court, for 948 dollars; and *David H. White & Co.*, on the 21st of *August*, 1847, upon a note dated *September* 7, 1841, recovered a judgment in said Court against *Benjamin Hubbs* for 648 dollars. All

of the above judgments, at the time this bill was filed, were outstanding and unsatisfied.

The bill prays that the premises be sold; that after the payment of said 1,060 dollars, with interest from the 1st of *September*, 1843, out of the proceeds, to the said *Basnet*, the complainants may be paid their judgment and interest; and for general relief.

The cause was submitted on bill, &c. The Court, upon final hearing, decreed that if *Basnet* would, within ninety days, &c., pay to the complainants their judgment, with interest, &c., then his title to the premises was to be forever good, &c., against the creditors of *Hubbs;* but in default of such payment the lot was to be sold, &c.; that out of the proceeds *Basnet* should be first paid 1,060 dollars, with interest, &c. The balance, or so much thereof as might be necessary, was to be applied to said judgment and interest thereon, &c., and the balance, if any, to be paid into Court, to await the further order, &c.

The case presented by the record leads us at once to inquire whether the deed from *Hubbs* to *Basnet* was made with intent to hinder, delay or defraud creditors. If fraudulent at all, it was actually so.

At common law, fraud was always a question of fact; but under the statute of 13 *Elizabeth*, the courts held that a voluntary conveyance was, as to existing creditors, constructively fraudulent. However, these decisions did not extend to a deed made upon a consideration deemed valuable. This conveyance was upon such consideration, and whether, in the case before us, the proofs show a fraudulent intent, is a question of fact and not of law. We have a statutory provision which settles this rule, and seems, in all cases arising under the act, to reduce fraud to a matter of intention. R. S. 1843, c. 33, s. 22.

When the lot in question was sold, *Hubbs* was largely indebted; the consideration given for it was obviously inadequate. These were facts from which actual fraud was inferable. But they were mere badges of fraud, and not fraud *per se*. Therefore it was competent for the parties to that sale to explain any suspicious circumstances sur-

rounding the transaction. It seems to us the record affords proof sufficient to repel any inference of a fraudulent intent, and leave the conveyance without imputation. It shows that *Hubbs*, when he sold the lot, believed that he had ample means to pay all his debts. *Basnet*, it appears, was of the same belief. We think it is clearly shown that the sale of the lot and store goods was made by *Hubbs* with the design of meeting his liabilities. To effect such purpose, the sale of property at less than its real value, and even at a sacrifice, is not unusual, and of itself would not indicate an impure intention. An individual may, under pressure of circumstances, be induced to sell at a particular time. The consideration, whether more or less, supports the contract. If he is competent to make a contract, he may dispose of his property as he pleases, provided there be nothing in the transaction illegal.

It is conceded by the complainants that the parties to the conveyance did not intend to commit actual fraud; but they contend that the sale was so inequitable that *Basnet*, after being repaid the amount by him advanced, with interest, should be held a trustee for *Hubbs's* creditors. This position does not seem to be correct, when all the facts connected with the transaction are considered. It appears to us that the sale was not inequitable. The lot was, in the first instance, a pure gift from *Basnet* to *Hubbs*. It never constituted any portion of his trading capital. Nor is there anything in the evidence upon which to found the slightest belief that credit was ever extended to him on account of it.

But suppose the sale was inequitable; the circumstances that made it so must have been the indebtment of *Hubbs* and the inadequacy of consideration. These facts were evidence of actual fraud, and, unrebutted, the conveyance must be deemed void as to creditors. As to them, the title would still be in *Hubbs;* the judgments against him liens on the property; and the lot subject to execution at law. R. S. 1843, c. 29, ss. 1, 2, 3. This view does not help the complainants. Their judgment

was a lien on the premises, subject, however, to the prior liens set forth in the record.   They did not even procure the levy of an execution.   Then, could they by their bill acquire a specific lien, and thereby obtain a priority and preference over the other creditors?   We think they could not.   "It is only where no lien is gained or can be acquired at law, that a creditor can obtain it by filing his bill."   The judgment set forth in the bill being the junior, the complainants were not entitled to a preference.   From this it would seem to follow that the decree cannot be sustained.

But the ground upon which we decide is, that the evidence, in our opinion, does not show the conveyance to have been made or received with intent to hinder, delay or defraud creditors.   Therefore, the decree must be reversed, and the Circuit Court ordered to dismiss the bill.

*Per Curiam.*—The decree is reversed with costs.   Cause remanded, with instructions to the Circuit Court to dismiss the bill.

*S. C. Stevens* and *J. Sullivan*, for the plaintiffs.

*J. W. Chapman*, for the defendants.