Boling *et al. v.* Howell.

Filed Jan. 30, 1884.

---

No. 10,649.

BOLING ET AL. *v.* HOWELL.

FRAUDULENT CONVEYANCE.— *Vendor and Vendee.*— *Vendor's Lien.*—*Preference of Creditors.—Consideration.— Parties.—Judgment.*—Complaint by H. against C. B., R. and others, averring that J. B. had conveyed certain lands to C. B. and taken notes for the purchase-money, which were held by the plaintiff by assignment for a valuable consideration, and were unpaid; that C. B. conveyed to another who had notice of the non-payment of the purchase-money, and that R., by suit, to which the plaintiff was not a party, obtained a decree making the land subject to execution to satisfy a debt due him from J. B., upon the ground that the conveyance to C. B. was in fraud of creditors, under which R. purchased at sheriff's sale, and obtained title with notice. Prayer to enforce a vendor's lien.

*Held,* that the complaint was good against R. on demurrer.

*Held,* also, that the plaintiff would be entitled to the relief sought against R. if it should appear that the consideration for the assignment was a pre-existing debt held by him against J. B., because in that case his rights would be those of a preferred creditor, guilty of no fraud.

*Held,* also, that the decree through which R. obtained title did not affect the plaintiff, inasmuch as he was not a party to it.

*Held,* also, that an answer in such case, that the conveyance by J. B. to C. B. was in fact fraudulent as against creditors, was bad on demurrer.

PRACTICE.—*Directing Verdict.*—*Evidence.*—Where the general denial and a special paragraph are pleaded, and the evidence is in any respect conflicting as to the issue made by the denial, it is error to take that question from the jury by an instruction that the verdict must be for the plaintiff unless the special defence is proved.

SUPREME COURT.—*Submission.*— *Parties.*— *Waiver.*—After submission of a cause by agreement in the Supreme Court, no question can be made as to the proper joinder of appellants.

From the Washington Circuit Court.

*D. M. Alspaugh, J. C. Lawler* and *A. B. Collins,* for appellants.
*S. B. Voyles* and *H. Morris,* for appellee.

ELLIOTT, J.—It is alleged in the complaint of the appellee, that on the 16th day of January, 1880, one Charles S. Boling executed to Jesse Boling two promissory notes for the purchase of real estate conveyed by Jesse to Charles; that in March, 1880, the former assigned the notes to appellee for the consideration of $480; that after the execution of these notes Charles Boling conveyed the land to Julia Boling, who, at the time, had knowledge that they were executed for the unpaid purchase-money of the land; that after the assignment and delivery of the notes to appellee, the appellant John W. Reyman instituted an action to set aside the conveyance of Jesse to Charles S., on the ground that it was made for the purpose of defrauding creditors, and recovered judgment declaring it fraudulent, but to that action appellee was not a party; that the land so conveyed by Jesse to Charles, and here in controversy, was ordered sold, and was sold and bought by Reyman, who purchased with full notice.

It is quite clear that the judgment in the action instituted by Reyman did not bind appellee, for it is well settled that a judgment only binds parties and privies. The case must, therefore, depend upon other considerations.

A vendor has a lien for unpaid purchase-money against the grantee and all who purchase from him with notice. Such a lien is, in legal contemplation, an equitable mortgage, and is assignable. Where notes are given for the purchase-money,

Boling *et al. v.* Howell.

and are transferred by assignment, they carry the lien to the assignee. *Shanefelter* v. *Kenworthy*, 42 Ind. 501; *Nichols* v. *Glover*, 41 Ind. 24. Jesse Boling had, therefore, a lien on the land sold to Charles, and by the assignment of the notes transferred it to the appellee.

We find nothing in the complaint impeaching appellee's right to enforce the lien assigned to him. It is assumed in the argument of appellee's counsel that the conveyance was a fraudulent one, and that, therefore, Charles Boling's title was defective, and that of his assignee no better. But the assumption is one not warranted by the facts pleaded. The presumption as to appellee is that of good faith, and this is in no wise overturned by the judgment suffered by his assignor in an action to which he was not a party. As the assumption on which the argument rests is an unwarranted one, we need not decide whether the conclusion would follow.

The fact, conceding it to be the fact, that the notes were assigned to appellee in payment of a precedent debt, does not show that there was no valid consideration for the assignment. A precedent debt is unquestionably a valuable consideration for a contract, but is not such a consideration as will make a grantee or assignee a *bona fide* purchaser against prior equities. *Hewett* v. *Powers*, 84 Ind. 295; *Louthain* v. *Miller*, 85 Ind. 161; *Fitzpatrick* v. *Papa*, 89 Ind. 17. As against one who has no prior equity, a precedent debt will support a contract otherwise valid. In the present case it also appears that the appellee surrendered a debt not due, and extended the time of payment of a debt not due, and this brought the case fully within the rule laid down in *Gilchrist* v. *Gough*, 63 Ind. 576; *Kester* v. *Hulman*, 65 Ind. 100.

A debtor may prefer one creditor although at the time in failing circumstances. *Lord* v. *Fisher*, 19 Ind. 7; *McGoldrick* v. *Slevin*, 43 Ind. 522. The fact that the transaction set forth in the complaint may have operated to give one creditor preference does not of itself give it a fraudulent character. *Gregory* v. *Harrington*, 33 Vt. 241.

General creditors have equal equities, and in this case, even upon appellants' theory, appellee was their equal, at least until the commencement of the action to set aside the conveyance, and they can not, therefore, successfully aver that the precedent debt was not a valuable consideration sufficient to support the contract of assignment made before their action was instituted.

It is no doubt true, as a general rule, that an assignee takes only the title of his assignor, but the question of what he does take can not be raised by every one, and that is the difficulty here.  As against the appellee the appellant Reyman shows no right to impeach the validity of the title of the assignor. If the complaint showed a judgment binding the appellee, or showed fraud as a fact, we should have a very different question, but it does neither; it simply shows a judgment not binding on appellee, and rendered in an action commenced subsequent to his acquisition of title.  There is no averment that as to the plaintiff the conveyance was fraudulent, and what was done or suffered by the assignor subsequent to the assignment in no wise affects its validity or force.

It is settled law that one who buys in bad faith may sell to an innocent purchaser and convey a perfect title.  *Sharpe* v. *Davis*, 76 Ind. 17.  This, it may be, forms an exception to the general rule, but it is as firmly established as the rule itself.  If, then, the appellee paid a valuable consideration for the land, he is entitled to protection, certainly against those not having superior equities, if not, indeed, as against all owners of unknown or secret equities.  The complaint, as we have seen, shows no superior equity in the appellant; for it does no more than show Reyman to be a general creditor, as was his adversary, before he received the assignment of purchase-money notes which carried to him a specific lien on the lands.  Until this assignment the parties were equals; thenceforward the holder of the specific lien occupied the "vantage ground."

We see no essential difference between the second and

third paragraphs of the answer, and think that the only material fact added to those stated in the complaint is that the transaction between Jesse and Charles Boling was actually fraudulent as against creditors. This fact ought not, in our opinion, to strike down the rights of appellee. It is quite clear that he might have taken from the debtor the land in payment of his debt, although the latter was then insolvent, and the conveyance operated as a preference. *Lowry* v. *Howard,* 35 Ind. 170 (9 Am. R. 676). As he, the appellee, was himself free from fraud, and was equal in equity with his adversary, he ought not to lose his rights because of the intermediate conveyance of the land. The case of *Gregory* v. *Harrington, supra,* lays down a doctrine in harmony with that which we here declare, and we deem it a correct one.

Equities prevail in the order of priority, and before any specific lien on the land had been acquired by Reyman, the appellee had acquired one, and was thus advanced beyond his competing creditor in the race of diligence, and, as he was free from wrong, he should have judicial protection.

In the attack upon the consideration yielded by the appellee, counsel for appellant lop off the bough which supports their own theory, for Reyman was merely the holder of a pre-existing debt. If this fact gave his adversary no prevailing equity, it certainly supplied him with none. So far, then, as this fact goes, the scales are in equipoise, and they were turned by the procuration of a specific lien for which Howell surrendered his debt againt Jesse Boling for one against Charles.

In the instructions given by the court, the jury were told that the appellee was entitled to recover on the note, and to enforce a lien against the land unless the defendant Reyman proved the fourth paragraph of his answer, and it is said that this answer alleges that the plaintiff, Howell, had full notice of the fraud. In so far as concerns the right of the plaintiff to a recovery against Charles Boling on the note, the instruction was correct, for there was no conflict of evidence

upon the question of the execution of the notes. As to the right to enforce a vendor's lien a different question arises, for upon this point there was some conflict of evidence. The right to enforce this lien was put in issue by the general denial of Reyman, and we think the court had no right to take this question from the jury.

We deem the instruction faulty in another particular, and that is, in affirming, as it impliedly does, that appellee took the assignment without full knowledge of the frauds of the assignor. It is true, that one who buys is not affected by mere rumors. *Foust* v. *Moorman,* 2 Ind. 17 ; *Flagg* v. *Mann,* 2 Sumner, 486. But while this is true it is not true that to charge one with notice, full knowledge is essential. Wade Notice, sections 3, 6, 7. Where the circumstances are such as to put the party on inquiry, and the case is one in which reasonable inquiry would lead to knowledge, the party is chargeable with knowledge. Wade Notice, section 10; *Martin* v. *Cauble,* 72 Ind. 67. It is perhaps true that the evidence of notice to Howells is weak, but there was evidence which entitled the appellant to the judgment of the jury. Whether the matters proved were sufficient to charge the appellee with knowledge ought to have been submitted to the jury under proper instructions, and they ought not to have been instructed that the defendant must prove full knowledge. It is not necessary that knowledge should be shown by direct evidence; it may be inferred from circumstances. Wherever circumstances are proved from which it may be justly and reasonably inferred that the party had knowledge, then the question is one of fact, and should, under proper statement of the rules of law, be submitted to the jury for decision.

The practice of instructing a jury that a plaintiff is entitled to recover unless the defendant has proved a designated paragraph of his answer is, if not positively a vicious one, at least one not to be commended. It is not always necessary to prove an entire answer in order to defeat a plaintiff. An

Boling *et al. v.* Howell.

elementary rule is that it is sufficient if the substance of the issue is proved, and an instruction which declares that the plaintiff must recover unless a named answer be proved can hardly be held good under this rule. Again, it is only the substantive and material facts alleged in an answer that need be proved, and this consideration goes far to condemn such an instruction as that under discussion, for it naturally leads the jurors to the conclusion that all the facts, material and immaterial, must be proved, and proved as laid; but whatever may be the true general rule upon the subject, and we do not now attempt to ascertain or declare it, we are satisfied that in this instance injury was done by the form of the instruction.

In concluding the brief for appellee it is insisted that the co-defendants of Reyman are not properly joined in this appeal, and that it must, therefore, be dismissed. Without deciding whether the assumption is or is not just we hold the position now untenable, because there has been a submission by agreement. An agreement to submit waives the objection here interposed.

For the error in instructing the jury the judgment is reversed.

Filed Sept. 21, 1883.

## On Petition for a Rehearing.

ELLIOTT, J.—The appellant's counsel ask us to grant a rehearing upon some of the points decided, and have again submitted lengthy briefs.

It is said that an error in naming the parties by calling Charles Jesse and Jesse Charles led to an erroneous conclusion; that there was an error in one place in giving the names is true; that it led to an erroneous conclusion is a mistake. The entire context of the opinion disclosed the trivial error in names, and clearly indicated the questions discussed.

It is said we did not examine the cases cited, and in this counsel are in error. We have not supposed it necessary to comment on all cases cited in argument; we have supposed it

only necessary to decide the points presented without, in every instance, making a commentary on the adjudged cases. We examined the case of *Trustees of Union College* v. *Wheeler*, 61 N. Y. 88, and found it in conflict with decisions of Chancellor Kent and other great lawyers, and that it is probably not in harmony with the weight of authority. But we found, also, that whatever might be its weight, it was not at all in point in the present instance. The point there decided which comes nearest any involved in this case is, that the assignee of a bond and mortgage takes them subject not only to any latent equities of the obligor and mortgagor, but of third persons having an interest in the mortgaged premises. The distinction between that case and the present is so plain that we can not see how it could be overlooked. In this case the appellant had no interest in the land; he was a mere general creditor. We have never before heard it contended that a general creditor has a latent or patent ownership in his debtor's land.

*De Witt* v. *VanSickle*, 29 N. J. Eq. 209, upon which so much reliance is placed, is as directly against the appellant and as flatly opposed to some of the dicta of the New York case as it is possible for one thing to oppose another. It is decided in that case that an assignee of a mortgage takes it " subject to all defences existing against the mortgagee in favor of the mortgagor, but free from latent equities existing in favor of third persons." It is evident, however, that counsel did not desire us to accept the decision as authority upon the point stated, but wish us to accept it as authoritative upon another point, and that is, that the assignee of a fraudulent mortgage who yields as a consideration an antecedent debt can not acquire any greater rights than the assignor possessed. If we were to concede in full the correctness of this decision, it is clear that it would do the appellant no good. Here the appellee surrendered a debt which was due him from Jesse Boling, and accepted a note executed by another person by which the time of payment was extended, and there is, therefore, a

complete and radical change of position.   In the New Jersey case the court treat as controlling the fact that the creditor was left precisely where he stood before.   We make this extract from the opinion : " He is put in no worse condition than he was before he obtained it; in the language of some of the judges, he is not hurt." Our own cases are directly and fully against appellant.   In *Gilchrist* v. *Gough*, 63 Ind. 576, it was held that an extension of time constituted the creditor a *bona fide* purchaser, the court saying: " For it appeared that, in each of said mortgages, the time of payment of the pre-existing indebtedness, to secure which the mortgage was given, had been extended for the term of one year, and this extension of time, as we have seen, was sufficient to make him a purchaser or mortgagee for a valuable consideration, as to each of the mortgages."

In the case of *Kester* v. *Hulman*, 65 Ind. 100, this doctrine is reaffirmed.   The question again came before the court in *Mayer* v. *Grottendick*, 68 Ind. 1, where *Gilchrist* v. *Gough, supra*, was approved, and NIBLACK, J., speaking for the court, said : " The renewal of a subsisting note and the consequent extension of time constitute, in any event, a sufficient consideration for a mortgage."

Counsel assume that the decision protects the fraudulent acts of the assignor of the note and lien, but this assumption is wholly unwarranted, for the protection is extended only to the assignee who paid value and acted in good faith.   We considered it in our original opinion as a plain principle of equity that a grantee who acquires rights for value, and in good faith, is protected, no matter what may have been the infirmity in the grantor's title and we suppose that no lawyer questions this doctrine, for all who have read the elementary books know that it is one of the earliest principles taught the student.   Counsel say that we ought not to pass the case of *Mingus* v. *Condit*, 23 N. J. Eq. 313 (8 C. E. Green), without notice.   We did not pass it without an examination, but we found it not

applicable to this case. What is there decided is, and we give the point in the language of the Chancellor: "The rule of equity regulating the transfer of property is that a purchaser who has obtained title as a mere security for or payment of a pre-existing debt, without parting with any thing of value, is not entitled to the character of a *bona fide* purchaser for value." What we have said shows the inapplicability of this doctrine to the present case.

Turning for a moment to the answers. The second paragraph admits, because it neither avoids nor denies, that the consideration paid was that described in the complaint, and it does not aver notice of the fraud of the assignor, and surely we need say no more of this paragraph. The third does aver that the notes were assigned for a pre-existing debt due from the maker of the note, but it does not aver that there was no change of position by the release of the original debtor; nor does it charge that the appellee had notice of the fraud. In view of this we can not see in what respect the case of *Dugan* v. *Vatier*, 3 Blackf. 245 (25 Am. Dec. 105), favors the appellant. There it was decided, to quote Judge Blackford's note: "A debtor to defraud his creditors, conveyed his real estate to a person with notice of the fraud. *Held*, that a *bona fide* purchaser, for a valuable consideration, from the fraudulent grantee,—having paid the purchase-money, and received a deed, before notice of the fraud,—will hold the estate against the creditors of the grantor. *Aliter*, if the purchaser from the fraudulent grantee had notice of the fraud." The case cited is against, not for the appellant. The fourth paragraph of the answer does contain the necessary averment, but on this paragraph the ruling was in appellant's favor.

Howell and Reyman were general creditors, with equal rights, and the debtor might, had he chosen, have conveyed the land directly to Howell, and is there any valid reason why he could not transfer the notes which represented the land? Our cases, however it may be elsewhere, have from the earliest time recognized the right of the debtor to prefer one cred-

itor to the exclusion of others. *Anderson* v. *Smith*, 5 Blackf. 395; *Hubbs* v. *Bancroft*, 4 Ind. 388; *Stewart* v. *English*, 6 Ind. 176. And the effect of the debtor's act in this case was simply to create a preference. If the creditor who takes the property does not participate in the fraud of the seller, he will acquire title. *Ball* v. *Barnett*, 39 Ind. 53; Bump Fraud. Conv. 485. In the case last cited it was said of the creditor who acquired the property of the debtor who had been guilty of fraud: "Her purpose was to secure part of an honest debt, and this she had the right to do, although it defeated the payment of other creditors, if she was guilty of no fraudulent conduct. She, by her superior diligence, accomplished, by the purchase of the property, what the appellants attempted to do by obtaining a confession of the judgment." These observations are strongly pertinent to the present case. The case of *Sharp* v. *Jones*, 18 Ind. 314, decides that "A purchaser of goods from a fraudulent vendor may have the legal and beneficial ownership in him." *Lord* v. *Fisher*, 19 Ind. 7; *Moore* v. *Meek*, 20 Ind. 484.

We have incidentally said that a mere general creditor has no interest in the debtor's land until after judgment, and we now refer to a few cases upon that subject. *Runyan* v. *McClellan*, 24 Ind. 165; *Russell* v. *Houston*, 5 Ind. 180; *Kennedy* v. *Shaw*, 38 Ind. 474, *vide* op. 478; Bump Fraud. Conv. 14.

It is said, in Bump on Fraudulent Conveyances, 448, that "A third person who is innocent of the fraud may enforce a promise made to him for a valuable consideration, although it grew out of the fraudulent transaction," and our case of *Moore* v. *Meek*, 20 Ind. 484, is cited as authority. This is substantially the position which the appellee occupies.

We have shown that the cases in the New Jersey court are unlike the present, and that is enough to exclude them from controlling influence here, but we do not mean to be understood as approving them. Mr. Bump says: "When a transfer, however, is made to a creditor, his equity is the same as that of the others, and he is entitled to the benefit of the universal

rule, that where the equities are equal the legal title must prevail.    An existing indebtedness is, therefore, a good consideration within the proviso which saves the rights of *bona fide* purchasers.    There being no equity prior to that of the vendee, the necessity which calls for a new consideration in other cases does not exist."    Bump Fraud. Conv. 178.    This is the rule of our court.    *McMahan* v. *Morrison,* 16 Ind. 172 ; *Dillon* v. *Dorne,* 19 Ind. 203.    The doctrine of these cases has not been changed, although some of the expressions in one of the opinions have been modified.    *Gilchrist* v. *Gough, supra.*

It leads to error to lose sight of the important fact that general creditors are equals, neither has the prior equity, and the fallacy in the New Jersey cases is in assuming, what can not be proved, that one general creditor has an equity superior to that of another creditor of the same class.    Few expressions are more common than that " the race is one of diligence between creditors," and this implies that they start from the same point; that at the beginning of the race they are equals.    If they are equals, then he who secures, without fraud, legal title to property and pays for it by releasing an antecedent debt, must hold it, for it is a fundamental principle pervading the universe of law, that the legal title will always prevail unless there are prior equities or rights.    The principle laid down in many cases that a pre-existing debt will not constitute such a consideration as will make one a *bona fide* purchaser against a person having prior equities, can not apply where rights and equities are equal.    To hold that it does would overturn all the cases which decide that a debtor may sell his property to one creditor in payment of an existing debt.    If the consideration is not a valuable one, then no creditor can buy his debtor's property and pay for it by releasing an antecedent debt, for if there is no valuable consideration, then, as against creditors, the sale is constructively fraudulent and void.    But no lawyer will question the right of the creditor to buy and the debtor to sell, and, therefore, the conclusion must be that an antecedent debt is a valuable

consideration. The error in the decisions of the New Jersey court is in assuming that there are different priorities in creditors of the same class. If one creditor can be said to have a prior equity, then it might well be that an antecedent debt would not constitute the creditor who bought the debtor's property with it, a *bona fide* purchaser, but it can not be said, without violating fundamental principles, that the equities of one creditor are prior or superior to those of another creditor of the same class. Petition overruled.

Filed Jan. 29, 1884.