Filed Feb. 2, 1894.

No. 16,330.

MILBURN *v.* PHILLIPS ET AL.

DEMURRER TO EVIDENCE.—*Effect of Demurrer.*—*When Should be Overruled.*—*Conflicting Evidence.*—The effect of a demurrer to evidence is, to concede the truth of all the facts which the evidence favorable to the opposing party tends to prove and all such inferences as can reasonably be drawn therefrom; to exclude from consideration all evidence favorable to the demurring party; to waive all objections to the admissibility of the evidence or defects in the pleadings. And in considering the demurrer, the court is not required to weigh or reconcile conflicting evidence; and if a jury might infer from the evidence, that the plaintiff's action should be sustained, the demurrer should be overruled.

FRAUDULENT CONVEYANCE.—*Real Estate.*—*By Father to Son.*—*Acts of Ownership by Grantor, After Conveyance.*—Where a resident householder of the State, who was largely indebted, conveyed land to his son, the expressed consideration in the deed being $5,000, the grantee having, at the time of the conveyance, property of the value of $400, and being a resident householder of the State, and paying no money for the land, and executing no notes or mortgage, or other evidences of indebtedness, except the stated consideration in the deed of $5,000, and after such transfer the grantor was possessed of property of the value of between $300 and $400, the grantee claiming the

Milburn v. Phillips et al.

conveyance to have been made in consideration of a preëxisting debt due and owing by the grantor to the grantee, no statement of such debt having ever been filed with the assessor, and after the conveyance the son allows the land to be sold for taxes, and the father continues to rent the farm and collect the rent and exercise acts of ownership,—such conveyance is in fraud of creditors.

SAME.—*Conveyance in Consideration of a Preëxisting Debt.—Assessment List.—Grantee's Condition.—Presumption.*—In an action to set aside a conveyance as fraudulent, the grantee claiming the conveyance to have been made in part consideration of a preëxisting debt owing to him by the grantor, the grantee's assessment list may be looked to to ascertain what particular personal property or claims he owns at the time, and, in the absence of controlling proof, his condition will be presumed to have remained the same when the conveyance was made.

DEED.—*Consideration Expressed.—Not Binding on Third Parties.—Evidence.*—The consideration expressed in a deed does not constitute *prima facie* evidence against third parties.

SHERIFF'S SALE.—*When Sale of Fee is Void Because Rents and Profits are Offered Without Appraisal.*—Where the judgment does not direct a sale of real property, by the sheriff, without appraisement, and the rents and profits are offered for sale without appraisement, and, no bid being received, the fee-simple is sold, there is no valid offer of the rents and profits, and the sale of the fee-simple is erroneous and void.

SAME.—*Sale Without Appraisement of Rents and Profits.—When not Cured by Section 743, R. S. 1881.*—Where a party obtains a judgment in an action for breach of a warranty contained in a deed, and execution is issued thereon, and the premises sold before an order has been made decreeing the previous sale and transfer fraudulent for failure to appraise the rents and profits before the sale of the fee on execution, it is not cured by section 743, R. S. 1881, providing that "Property conveyed by a debtor, with intent to hinder, delay, or defraud creditors, shall be sold without appraisement."

SUPREME COURT PRACTICE.—*Presumption.—Sheriff's Return.—Appraisement.—Real Estate.—Rents and Profits.*—Where an appeal is taken from a judgment refusing to set aside a sheriff's certificate of sale, and the appellant states in his brief that there has been no appraisement of the rents and profits, and appellee admits such fact, the appellate tribunal will not presume that the sheriff did his duty and made the appraisement from the fact that his return is silent as to such matter.

From the Boone Circuit Court.

*T. H. Palmer, W. F. Palmer* and *A. E. Page,* for appellant.

*W. R. Moore, D. W. Howe, C. F. Coffin, C. S. Wesner, S. M. Ralston* and *M. Keefe,* for appellees.

DAILEY, J.—This cause was commenced in the Clinton Circuit Court, by appellant, against all of the appellees, except Joseph E. Milburn.    He alleged that he was the owner, .in fee, of the south half of the southeast quarter of section 25, in township 21 north, range 2 west, in said county.

The complaint sought to set aside a certain sheriff's certificate of sale, which appellees Phillips and Moore had against said premises.    It sets out the judgment on which the sale was made, showing that it was against Joseph E. Milburn, and not, therefore, a lien on the land of the appellant, who was the plaintiff in said cause.

The complaint was answered, in the first instance, in three paragraphs.    First, in general denial.    The second, in substance, admits that on and before the 11th day of September, 1888, Joseph E. Milburn was the owner of said real estate, and conveyed the same, by deed, to Robert C. Milburn, but says that said deed was executed without any consideration, and in fraud of the creditors of Joseph, and that Phydella E. Phillips was, at the time, a creditor of the grantor.    The third paragraph of answer is the same as the second, save it also alleges that Joseph E. Milburn is the father of the plaintiff, the appellant herein, and that said Robert and Joseph, with the intent to hinder, delay, and defraud the creditors of Joseph, conspired and confederated together, and caused the deed to be made to the former by the latter.

Both paragraphs aver that the father had not, after

the conveyance was made, sufficient property subject to execution with which to pay his debts, and ever afterwards continued insolvent.

Appellees herein also filed a cross-complaint in two paragraphs, containing, in substance, the same allegations as are embraced in the second and third paragraphs of the answer, and setting out therein the judgment and sale of the real estate, and asking that the deed of date September 11, 1888, to Robert, by his father, be set aside, and the sale of the land, on defendant's judgment, sustained.

Joseph E. Milburn is made a party to answer the cross-complaint, and the Milburns answer by general denial.

Appellees, defendants below, having secured a sheriff's deed for said tract, pending the suit in the Clinton Circuit Court, filed a supplemental cross-complaint of ejectment against the Milburns, which was answered by general denial.

The cause was first tried in the Clinton Circuit Court, which resulted in a finding and judgment for the defendants, on their cross-complaint, and against appellant on his complaint.

The supplemental complaint being in ejectment, the appellant was granted, on his own motion, a new trial as a matter of right. Afterwards, on proper affidavit, the venue of the cause was changed to the Boone Circuit Court. In the latter court, the denial was withdrawn to plaintiff's complaint. The trial of the cause was submitted to a jury, and at the close of the evidence on the part of the defendants (appellees herein) the plaintiff filed his demurrer thereto, and the cause was withdrawn from the further consideration of the jury. The demurrer was, by the Boone Circuit Court, overruled, and the rul-

ing of the court below thereon presents the only question for the consideration of the court.

The appellant has assigned as error:

First. That the court erred in overruling plaintiff's demurrer to defendants' evidence.

Second. That the court erred in rendering the judgment and decree which is rendered in this cause.

The real question presented for our consideration is: Did the court err in overruling the demurrer to the evidence?

Before presenting the material features of the evidence, it is proper and essential that we should advert to certain rules, the aid of which is invoked as a guide to courts in the consideration, by them, of the evidence in a cause where a demurrer to the evidence has been interposed.

In McLean, Admr., v. Equitable, etc., Assurance Society, 100 Ind. I27 (130 and 131), is a collation of authorities, and their correctness is borne out by an examination of the decisions to which reference is made.

The effect of the demurrer is to concede the truth of all the facts of which there is any evidence against the demurring party, and, if there is a conflict in the evidence, it prevents him from insisting upon any evidence in his favor as to the disputed facts.    Willcuts v. Northwestern, etc., Life Ins. Co., 81 Ind. 300.

The demurrer admits all the facts which the evidence tends to prove, and all such inferences as can be drawn therefrom.    Willcuts v. Northwestern, etc., Life Ins. Co., supra; Radcliff v. Radford, 96 Ind. 482.

It excludes from consideration the evidence of the party demurring.    Ruddell v. Tyner, 87 Ind. 529.

Which is treated as withdrawn.    Adams, Assignee, v. Slate, 87 Ind. 573.

As the evidence of his adversary alone is involved in

the issue raised by the demurrer. *Fritz* v. *Clark*, 80 Ind. 591.

If, upon such evidence, with every reasonable inference which may be drawn therefrom, a jury might rightfully find against the party demurring, the demurrer should be overruled (*Hagenbuck* v. *McClaskey*, 81 Ind. 577; *Nordyke, etc.,* v. *Van Sant*, 99 Ind. 188), as the party demurring admits all the facts of which there is any evidence (*Trimble* v. *Pollock, Admr.*, 77 Ind. 576), and consents that whatever reasonable inferences can be, shall be, drawn from the evidence against him. *Ruff* v. *Ruff*, 85 Ind. 431.

And the court is bound to take as true all the facts which the evidence tends to prove, and such inferences from them as the jury could have drawn, though the jury might not have drawn them. *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261.

But the court is not required, in considering the demurrer, to weigh or reconcile conflicting evidence, nor to consider that which favors the party demurring when it is in conflict with the other evidence against him. *Indianapolis, etc., R. R. Co.* v. *McLin*, 82 Ind. 435.

The demurrer waives objections to the admissibility of the evidence. *Miller* v. *Porter*, 71 Ind. 521.

And no advantage can be taken of any defect in the pleadings as a reason for sustaining the demurrer. *Lindley* v. *Kelley*, 42 Ind. 294.

As sustaining a demurrer to the evidence works a final disposition of the case, the court does not err in overruling such a demurrer whenever there is testimony which, although weak and inconclusive, fairly tends to prove every material fact, and is sufficient to justify a court in overruling a motion to set aside a verdict based thereon. *Kansas Pacific R. W. Co.* v. *Couse*, 17 Kan. 571.

And if, from the evidence, a jury might infer that the plaintiff's action should be sustained, the demurrer should be overruled, and the plaintiff should have judgment. *Wright, Admr.,* v. *Julian,* 97 Ind. 109.

In line with these authorities, and in addition thereto, see *Palmer* v. *Chicago, etc., R. R. Co.,* 112 Ind. 250; *Evansville, etc., R. R. Co.* v. *Marohn,* 6 Ind. App. 646, 34 N. E. Rep. 27.

It is the law that a voluntary conveyance is not, for that reason alone, fraudulent, for it is the right of every person owning property to dispose of it at any price he may see fit, or donate it to others, provided, always, if, at the time of the conveyance, he retain sufficient assets to pay all existing liabilities; and when a voluntary conveyance is made by one largely indebted, in comparison to his resources, the transaction, in itself, raises a presumption of constructive fraud, no matter what the motive which induces it; the deed will be void as to creditors. 1 Story Eq., sections 353 and 355; Warville on Vendors, 623.

A person can not give away any of his property to the injury of his creditors. *Sherman* v. *Hogland,* 73 Ind. 472; *Barkley* v. *Tapp,* 87 Ind. 25; *Eiler* v. *Crull,* 112 Ind. 318.

One great circumstance which should always be attended to in these transactions is, whether the person was indebted at the time he made his conveyance, and, if he was, it is a strong badge of fraud. *Paine* v. *Doe on Demise,* 7 Blackf. 485.

If the effect is to withdraw any portion of the property, so that there does not remain sufficient to enable creditors to pay themselves, the conveyance is clearly within the statute. A transfer of all the donor's property is for this reason fraudulent. A universal donee is bound to pay the debts of the donor, existing at the time of the

donation, or abandon the property thus given.    Bump on Fraud. Conv. 292.

When no consideration is paid, it is not necessary that the grantee should have notice of the grantor's fraudulent intent. *Barkley* v. *Tapp, supra; Spaulding* v. *Blythe,* 73 Ind. 93.

Where a vendee participates in the fraud of the vendor, to delay, hinder, or defraud the creditors of such vendor, even though a full consideration has been paid for the property, the conveyance will be set aside. *Gardinier* v. *Otis,* 13 Wis. 514; *Briscoe* v. *Clarke,* 1 Rand. 213; *Tootle* v. *Dunn,* 6 Neb. 93.

This is a well recognized principle of the law, and the courts have held that the purchaser is to be charged with notice of the character of the transaction, when he is acquainted with the circumstances sufficiently to convince the court or jury that he knew the facts.    *Green* v. *Tantum,* 19 N. J. Eq. 105.

Or, if he has a knowledge of such facts as would excite the suspicion of an ordinarily prudent man, and fails to make inquiry, and purchases from a fraudulent vendor, he is not a *bona fide* purchaser, * * and will be charged with notice of any fraud upon creditors affected by the sale and transfer.    *State* v. *Estel,* 6 Mo. App. 6, 6 N. W. Rep. 392.

It is true, fraud is never presumed, but must be proved by the party charging it; and to make fraud available in any given case, it must be proved as alleged, the presumption always being against bad faith.    *Stewart* v. *English,* 6 Ind. 176; *Morgan* v. *Olvey,* 53 Ind. 6; *Luce* v. *Shoff,* 70 Ind. 152; *Wallace* v. *Mattice,* 118 Ind. 59.

It is part of the equity doctrine of fraud not to define it, nor to lay down any rule as to the nature of it, lest the craft of men should find ways of committing fraud which might escape the limits of such a rule or defini-

tion.   It includes all acts, omissions, or concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.   1 Bouv. L. D. 617.

The proof of fraud is seldom direct; it usually consists of a chain of circumstances that indicate and accompany the wrongful act:   First. There may be the confidential relation of the parties.   Second. The vendor being involved at the time of the transfer, and pressed for payment.   Third. The transfer of all the vendor's property. Fourth.   The vendee being insolvent at the time and before the transfer is made.   Fifth. The deed being kept off the record for the space of several months.   *Sherman* v. *Hogland*, 73 Ind. 472 (476).

Whether a deed, made upon a valuable consideration, is fraudulent or not, is, under the statute, a question of fact and not of law.   *Hubbs* v. *Bancroft*, 4 Ind. 388.

In courts of equity, fraud will be presumed from the circumstances of the parties (*Booth* v. *Bunce*, 33 N. Y. 139), and when the evidence tends to show the fraudulent character of the transaction to one claiming to be a *bona fide* purchaser, and he remains silent, this is presumptive evidence of fraud.   A conveyance to his son, by a parent who is largely indebted, of large and valuable property, for a small sum down and notes for the balance, or when the consideration is the assumption of a mortgage on the property, simply, will be held to be fraudulent. *Zoeller* v. *Riley*, 2 N. E. Rep. 388; *Star Wagon Co.* v. *Maurer*, 5 N. W. Rep. 576; *Knowlton* v. *Hawes*, 7 N. W. Rep. 286; *Dickerman* v. *Farrell*, 13 N. W. Rep. 422.

A conveyance, however made, is void, if the intent and purpose of the grantor and grantee is to defraud creditors.   What can not be done directly can not be done by indirection.   Forms are of little moment, for

where fraud appears courts will drive through all matters of form, and expose and punish the corrupt act. A conveyance is not protected, although full consideration has been paid, where grantor and grantee unite in a fraudulent design to defraud creditors. Here, however, the consideration upon which the conveyance rests was grossly disproportionate to the value of the property.

Where property is fraudulently conveyed, the grantee holds it in trust for the creditors of the grantor; but this is not a trust created by the contract of the parties, and appellees are in error in supposing such a trust to be within the statute. Few principles are more firmly settled than that the statute creating trusts by parol has no reference to resulting trusts. *Buck* v. *Voreis*, 89 Ind. 116.

It is not enough, in order to support a settlement against creditors, that it be made for a valuable consideration. It must be *bona fide*. If it be made with intent to hinder, delay, or defraud them, it is void as against them, although there may be, in the strictest sense, a valuable, or even an adequate, consideration. Wait on Fraud. Conv., section 207; *Blennerhassett* v. *Sherman*, 105 U. S. Rep. 100.

Bump, in his Work on Fraud. Conv., lays down the following excellent rules as a guide in determining the transaction:

First. The tendency *pro tanto* of every transfer that can be made by a debtor, is to hinder and delay his creditors, for it diminishes the fund out of which they can enforce payment. A transfer of all the property of a debtor, not only diminishes the fund, but is not an ordinary transaction, and is, therefore, a badge of fraud —page 79.

Second. As every transfer by a debtor tends to diminish the fund from which payment can be enforced, em-

barrassment and heavy indebtedness are badges of fraud —page 80.

Third. The expectation or pendency of a suit is a badge of fraud, because a transfer tends to deprive the creditor of the means of enforcing his judgment when he obtains it—page 81.

Fourth. Secrecy is a badge of fraud because it tends to deceive the creditors, and is not in the course in which men ordinarily transact business—page 81.

Where the proof shows that the deed was withheld from record for an unusual time, the secrecy of the transaction adds weight to the presumption to be overcome by satisfactory evidence. *Zimmer* v. *Miller*, 64 Md. 296, 1 Cent. Rep. 702.

Fifth. A vendee who purchases the property of an insolvent debtor, for less than its value, thereby deprives the creditors of the difference, and defeats their just expectations. Inadequacy of price thus tends to defraud them and is a badge of fraud. Bump on Fraud. Conv., 86.

Sixth. The retention of the possession of land and the exercise of unequivocal acts of ownership over it is a badge of fraud, for it is not in the usual course of business, and indicates a secret trust for the benefit of the debtor. The acts of ownership may consist either in renting or collecting rents. Bump on Fraud. Conv., 90-91.

Seventh. Anything out of the usual course of business is a sign of fraud. The same principle applies to the absence of accounts between the parties, when the consideration purports to be in consideration of a debt due to the grantee, to the retention of the deed or the mortgage note, by the debtor, to the omission to execute the mortgage note at the same time with the mortgage, to any alteration of a mortgage note, to the alienation of valuable property without payment or security, to the

purchase of property for which the grantee has no use, to the grantee's entrances into business foreign to his own, to the grantee's pecuniary ability to make the purchase, to the grantee's failure to pay taxes. Bump on Fraud. Conv., 92-93.

Eighth. The omission of the grantee to testify or produce the debtor, or any other important witness, is ground for an unfavorable presumption, and frequently exercises an important influence upon the final determination of the question of fraud. Bump on Fraud. Conv., 95.

Keeping in view and applying to this case, as far as they are applicable, the rules to which we have referred, we will briefly present the facts in the case, as disclosed by the evidence.

It is established, that on September 13, 1884, Joseph E. and Malinda Milburn, parents of appellant, executed a warranty deed to one Thomas S. Peake, for a certain 12 acre tract of land in Clinton county, Indiana, for a valuable consideration; that on November 22, 1884, said Peake, unmarried, conveyed said real estate by warranty deed to one David Dukes, who, on the 19th of October, 1885, his wife joining him therein, conveyed the same by deed of warranty to Phydella E. Phillips, an appellee, for the sum of $500; that the respective grantees took possession of said tract; that prior to the execution of said several deeds, the grantor, Joseph, had encumbered the realty with a mortgage to one Martha Gher; that afterwards, to wit, at the September term, 1887, of the Clinton Circuit Court, said mortgage debt still remaining unpaid and being due, said Gher caused suit to be instituted whereby said mortgage was foreclosed; that, by virtue of said judgment and decree, the sheriff of said county, on November 30, 1887, sold said land to said Gher; that there was no redemption from said sale; that

said Gher assigned the certificate to Simon Foulke, who, after the year for redemption had expired, obtained a sheriff's deed therefor, and the appellee Phillips was evicted, and the premises taken from her.

It is also conceded, that on September 11, 1888, and for a long time prior thereto, continuously, Joseph E. Milburn was the owner of 160 acres of real estate described in the complaint in this action, which includes the land in controversy, and was of the value of $40 per acre, and that on said day he conveyed the same to his son Robert, appellant herein; that there was a consideration of $5,000, expressed in the deed, and that Joseph's wife did not join therein.

It was admitted by the parties to this suit, for the purpose of the trial, that appellant had, at the time of this conveyance, aside from the debt which his father owed him, property of the value of $400, and that he was a resident householder of the State, and that after the transfer said Joseph was possessed of property of the value of between $300 and $400, and that he was a resident householder of the State; that the deed to appellant was not recorded until April 10, 1889.

No sum of money was ever paid by the grantee, for the land, and no notes, mortgage, or other evidences of indebtedness, were executed therefor; but the deed states a consideration of $5,000.

After the conveyance to appellant, he allowed the west eighty of the tract to be sold to pay a ditch assessment of $85; he paid no taxes, but suffered the east eighty to be sold by the county treasurer in satisfaction of taxes, all of which indicate that grantee was insolvent. The facts further show that while appellant assumed that his father owed him prior to the conveyance and that he received the deed, to discharge, in part, a preëxisting debt, the

.appellant testified that he never filed with the assessor any such credit.

This statement is important.    If appellant gave a true .list to the assessor, of all his personal estate and choses in action, he had no claim against his father.    The jury would have a right to believe that he was assessed upon all of his property.    *Towns* v. *Smith*, 115 Ind. 480 (483); *Lefever* v. *Johnson*, 79 Ind. 554.

The statement contained in the assessment list can, with propriety, be looked to to ascertain what particular personal property, or claims, a person owns at the time, and, in the absence of controlling proof, his condition is presumed to have remained the same when the conveyance was made.    *Adams, Assignee,* v. *Slate, supra; Towns* v. *Smith, supra.*

The evidence of Isaac Wainscott shows that prior to the conveyance to appellant, the grantor told him, "He was going to have his son come onto the farm; that it would pay him better than to run it himself."    "He thought this plan would pay his debts more rapidly."    "He was in debt, and he wanted to get out."    "That he thought the Phillipses would not make their money out of this land."

Witness also testifies to being in possession of the farm in controversy as tenant of Joseph E. Milburn, who, in February, 1889, signed and served upon him a written notice to quit the possession.

Frank Caldwell testified, that he and the appellant rented this farm of Joseph in the fall of 1888; that appellant gathered his share of the corn, and the oats were turned over to the father.    Robert told this witness that his father deeded him the land, and had nothing of his own, and that he did not intend to pay the Phillips debt if he could help himself.

William Crouch says Robert told him he was going to run the farm and fix it up.

There was evidence that the father was exercising possessory acts over the farm long after the son claimed to have procured a deed for it, and the witness Frank Culver testified, in substance, that a short time before hay harvest, in 1890, Robert said to him that he had no hay to put up on the shares, but his father had, identifying the hay and locating the meadow on the land in dispute.

Taking all the facts together, which the evidence adduced tends to prove, a fair inference might be drawn that it was the intention of the father, shared in by the son, that the claim of Mrs. Phillips should not be paid; that, to accomplish such purpose, the transfer of the real estate was made, and that the son was placed in possession of the land merely as his father's tenant. We attach no importance to the recital in the deed that the consideration is $5,000. This is not an action between the grantee and the grantor, or any of the heirs or privies of the grantors, but it is one between the creditors of the grantor and the grantee, and, hence, the consideration expressed does not constitute *prima facie* evidence against the appellees.

2 Warville on Vendors, section 19, p. 622, reads: "Nor will one who takes land as a volunteer, although without notice of the equities of others, be protected against third parties claiming equitable rights. He must prove that he paid the purchase-money, and this, independently of the recitals in his deed."

"There must be evidence *dehors* the instrument." *Baskins* v. *Shannon*, 3 Com. 310.

The same motive which would induce a party to execute a fraudulent conveyance would induce him to insert and acknowledge a receipt of payment.

"The recital of consideration in the deed can not be considered as evidence against creditors, for they are strangers to the transaction." *Allen* v. *Cowan*, 28 Barb. 99; Bump on Fraud. Conv., p. 554; Wait on Fraud. Conv., section 220; Devlin on Deeds, sections 818 and 819; *Peck* v. *Mallams*, 10 N. Y: 528.

Appellants and appellees in this case all trace their claim of title to a common source.

Where both plaintiff and defendant claim title from a common source, the plaintiff is only required to prove such source of title. 6 Am. and Eng. Encyc. of Law, p. 524.

Appellant's contention that a party must recover, if at all, on the theory of at least one paragraph of his pleadings, is sound law. *McAroy* v. *Wright*, 25 Ind. 22; *Paris* v. *Strong*, 51 Ind. 339; *Boardman* v. *Griffin*, 52 Ind. 101; *Terry* v. *Shively*, 64 Ind. 106; *City of Huntington* v. *Mendenhall*, 73 Ind. 460; *McConnell* v. *Citizens' State Bank, etc.*, 130 Ind. 127, 27 N. E. Rep. 616.

But the cases cited do not apply to the facts in the case now under consideration. The supplemental cross-complaint makes an action of ejectment to which the proofs were directed.

Appellant availed himself of this, in the court below, when he secured himself a new trial as of right. The record shows that the sheriff had the land appraised prior to the sale, but did not have the rents and profits appraised. He offered the rents and profits, and, receiving no bid, offered the fee-simple. We think this vitiated the sale.

In *Davis* v. *Campbell*, 12 Ind. 192, the court says: "Where property can not be sold by the sheriff without appraisement, it can not be legally offered for sale without appraisement. Such an offer would be a vain act, which no bidder could be expected to notice."

The force of the decision is that where the judgment did not direct a sale of real property, by the sheriff, without appraisement, and the rents and profits were offered for sale without appraisement, and, no bid being received, the fee-simple was sold, there was no valid offer of the rents and profits, and the sale of the fee-simple was, therefore, erroneous.

In this connection see also R. S. 1881, section 754; *Indiana, etc., R. W. Co. v. Bradley,* 15 Ind. 23; *Tyler v. Wilkerson,* 27 Ind. 450.

It is urged by appellee, that the sale was made by virtue of clause 2 of section 752, R. S. 1881: "Lands fraudulently conveyed with intent to delay or defraud creditors."

If this were true, the provisions of section 743, R. S. 1881, would apply, which reads as follows: "Property conveyed by a debtor, with intent to hinder, delay, or defraud creditors, shall be sold without appraisement."

In our opinion, these sections can have no application to the case at bar, in which there was an ordinary judgment rendered in an action for breach of the covenants of warranty, an execution issued thereon, and the premises sold to appellee before an order had been made decreeing the previous sale and transfer to appellant fraudulent.

This court, in *Mugge v. Helgemeier,* 81 Ind. 120, carried the rule to its utmost limit in holding that "real estate, which the debtor has conveyed or caused to be conveyed with intent to defraud his creditors, may be sold without appraisement," there having been an adjudication that the conveyance was fraudulent, although the original judgment and execution had not so provided.

The equities in this case appear to be with the appellee. She lost her land in a foreclosure suit to collect a

debt created by Joseph E. Milburn, and which, from the evidence, he ought to pay. She was compelled to institute, against him, an action for the breach of the covenants of warranty, which he resisted at every step until she obtained a judgment for $549.25, that will remain unpaid, if she be defeated in her claim to the land in controversy; the tract now in litigation was sold on an execution to satisfy said judgment, and the son has contested the right to the premises by this proceeding. The transfer to him was a colorable transaction—mere form.

Two *nisi prius* courts have found against him, and we regret that we are compelled to disturb the finding and judgment.

Judgment reversed, at cost of appellee, with instructions to the circuit court to grant a new trial.

Filed Oct. 12, 1893.

## OPINION ON PETITION FOR A REHEARING.

DAILEY, J.—Counsel for appellees earnestly insist that there should be a rehearing in this cause, for the reason that the court erred in ruling that the record shows that the sheriff who made the sale of the real estate in controversy did not have the rents and profits appraised prior to such sale.

They further say: "It is true that the record shows that the sheriff attached to his return what purported to be an appraisement of the real estate, and the schedule signed by the appraisers makes no mention of any appraisement of the rents and profits. But such appraisement is no part of the return, and, if it were, is no evidence that the rents and profits were not appraised."

In support of this contention they cite *Coan* v. *Elliott*, 101 Ind. 275.

We are now asked by the learned counsel to construe the record in this case as if it were wholly silent upon

the question whether there was or was not an appraisement of the rents and profits, and to find, this being so, that there is nothing to rebut the presumption that the land was appraised.

Counsel say: "All that a purchaser, who relies upon a sheriff's deed, need do in order to show a valid title to real estate, is to prove a valid judgment against the owner, an execution thereon, and a sheriff's deed pursuant thereto."

To uphold this doctrine, they cite *Mercer* v. *Doe on Demise,* 6 Ind. 80; *Hall* v. *Craig,* 125 Ind. 523 (527).

Our attention is also called to 2 Freeman on Executions (4th ed.), section 339, p. 1139, declaring that "the presumption is and continues until overcome by affirmative proof, that the sheriff did his duty in all respects."

Several other authorities are cited sustaining the same rule.

It is clearly the law that courts indulge this presumption when the record is silent as to what he did in the matter under consideration. But appellees are confronted, in this case, with a singular condition of affairs.

Among other points made by the appellant in his original brief, filed December 16, 1891, nearly two years before the decision was rendered, is the following: "There is one other consideration: The judgment of Phillips against Joseph E. Milburn was not without relief from valuation or appraisement laws. The sheriff had the lands appraised, but did not have the rents and profits of the land appraised. He offered the rents and profits, and receiving no bid, offered the fee-simple. For this reason the sheriff's sale is invalid and should be set aside."

In support of this contention, appellant cited: R. S. 1881, section 754; *Davis* v. *Campbell,* 12 Ind. 192; *In-*

*diana, etc., R. W. Co.* v. *Bradley,* 15 Ind. 23; *Tyler* v. *Wilkerson,* 27 Ind. 450.

In response to this, appellees, on April 20, 1892, in their only brief, except on petition for rehearing, say: "Appellant admits that the land was appraised, but finds fault that the rents and profits were not appraised. In answer to this we can only say that the rents and profits were not sold, therefore no injury occurred to the appellant, or any one else, even if it was necessary to appraise the rents and profits, which, we think, was not necessary in this action."

To maintain this theory counsel cited: R. S. 1881, section 743; *Mugge* v. *Helgemeier,* 81 Ind. 120 (124).

It thus appears that appellant made a clear and concise statement, in his brief, challenging the record and asserting that the rents and profits were not appraised prior to the sale of the real estate sought to be recovered in this action. This fact appellees admit to be true, but assert that as the rents and profits were not sold no injury was sustained by appellant.

Counsel having made this concession, the court relied upon it as true.

Rule 26 of this court provides that "If a statement of fact is made by counsel, and not questioned or explained by opposing counsel, it will be deemed by the court to be accurate."

Elliott's Appellate Procedure, note 1, p. 373, says: "This provision does no more than give expression to a general doctrine that has long prevailed."

In section 443 of this valuable work, he uses this language: "The presumption is that facts stated in the brief of counsel are correctly stated and that the record is truthfully represented. As it has been said, 'counsel's statement of the facts is a certificate of fairness and accuracy,' and the courts will assume, in the absence of

a countervailing showing, that the facts are fairly stated and that there is neither intentional wrong nor innocent mistake. It is, therefore, incumbent upon counsel who believe that the facts are incorrectly stated, or the record not accurately represented, to contradict or explain the statements of their opponents. If they do not make the necessary corrections or explanations the court will accept that made by their adversaries as true and accurate.

In view of the admissions made by counsel as to the condition of the record, the petition for rehearing is overruled.

Filed Feb. 16, 1894.