THE NEW ALBANY AND SALEM RAILROAD COMPANY and Others
*v.* HUFF.

The Circuit Court of one county has no jurisdiction to adjudicate upon the title to land in another county, where no part of the land, the title of which is involved in the action, is situated in the county of the forum.

A creditor, in the absence of a statutory prohibition, may, at any time, before liens have attached on his property, make a general or partial assignment to a trustee for the benefit of his creditors, with preferences, or he may assign the whole for the benefit of a single creditor.

The mere reservation, in such an assignment, of the surplus, "if any there should be," to the debtor, will not vitiate the assignment.

The omission, in an assignment, to limit the time for the assignee to apply the proceeds of the assigned property, is not objectionable; because the law, in such cases, requires it to be done in a reasonable time.

APPEAL from the *Tippecanoe* Circuit Court.

DAVISON, J.—*Huff* was the plaintiff below, and the appellants were the defendants. The following is the case made by the record: On the 6th of November, 1857, *Huff*, the plaintiff, recovered a judgment in the *Tippecanoe* Circuit Court, then in session for *Tippecanoe* county, against the *New Albany and Salem Railroad Company*, for three thousand and eighty-three dollars, with costs, etc. At the time of this re-

covery there existed in that Court, against said company, other judgments for large amounts, which were, and still are, liens on the real estate of the company situate in said county, and amount to a sum largely beyond the value of any and all property situate in that county belonging to the company, so that an execution issued on the plaintiff's judgment at any time since its rendition, and levied on any and all of the company's property in said county, would have been useless and unavailing. In July, 1858, *Huff* caused an execution to issue on his judgment to the sheriff of *Jasper* county, by virtue of which he levied on certain lands in that county belonging to the company. On the 2d of August, 1857, the company executed to *Jesse J. Brown* a deed of conveyance, whereby she conveyed to him, in trust, certain real and personal estate described in the deed, among which are the lands so levied on by the sheriff. This deed is set forth in the pleadings, and says, among other things, "That the company, for the purpose of borrowing money to make and operate her railroad, and of paying debts incurred for that object, have procured several persons to become parties to divers notes, bills, and other contracts, by being makers, acceptors, or indorsers thereof, for the sole accommodation of the company. And the company may hereafter, for the same purpose, procure the same or other persons to become parties, in like manner, to other notes, bills, and contracts, for her sole accommodation, and on some or all of which notes, bills, or other contracts, such parties now are, and may hereafter become, liable. And being desirous to secure and indemnify them against all loss by reason of the matters aforesaid, the company, in consideration of the premises, and of one dollar paid to her by the said *Brown*, "grants, bargains, and sells to him all her lands, tenements, and hereditaments, wherever situate, which are not necessary for operating her railroad; and all her locomotives, passenger and freight cars, and appurtenances, etc.; and all materials, machinery,

**446**      SUPREME COURT OF INDIANA.

The New Albany and Salem Railroad Company and Others *v.* Huff.

and tools of whatsoever kind, the title to which has become vested in said company since December 22, 1855; and all the lands, tenements, and hereditaments of said company, the title to which has become vested in her since her first organization, which are not necessary for the use of operating her railroad; and all the cord-wood along the entire line of said road, which has been purchased, and accepted, and taken possession of by the company since December 21, 1856; to have and to hold in trust, to sell and dispose of the same, from time to time, without any benefit whatever of any stay or appraisement laws, etc.; to pay any or all of said notes, bills, and other contracts, and to repay to all or any of said persons all sums they may have been obliged to pay, and fully to indemnify them severally for all loss they or any of them may sustain by reason of being a party to any such note, bill, or other contract, as aforesaid. After all said notes, bills, and other contracts shall be fully paid, and said persons shall be fully indemnified on account thereof, and after paying all just expenses of the trust, all the balance of said granted property, and the proceeds of any of it, if there shall be any such balance, shall be delivered to said company, until such property shall be wanted for the purposes of the trust, the same shall remain in the possession of the company; but the president thereof may, at his discretion, deliver the possession thereof to said *Brown* at an earlier time. And said trust is intended for the benefit of *John Bushnell, James Montgomery, Jesse J. Brown, George Lyman, James Brooks, Douw D. Williamson, George T. Talman,* and all others who have or may become parties to any note, bill, or other contract, for the company's sole accommodation.

It is averred, in the complaint, that at the time of the execution of the deed, the suit for the recovery of the plaintiff's judgment was pending in the *Montgomery* Circuit Court, and that the same was executed with intent to delay and defraud creditors, etc. The prayer for relief is, that the deed,

from the company to *Brown*, be held fraudulent, etc.; that all the property which it describes be deemed liable to said judgment; and that the property levied on be sold without appraisement, and the proceeds thereof be applied to the satisfaction of said judgment, etc. The defendants demurred to the complaint, but their demurrer was overruled, and thereupon they answered by a general traverse.

The issues were submitted to the Court, upon an agreement which reads thus: "Defendants admit all the allegations in the complaint, with this exception: they do not admit that the deed is fraudulent on its face, and void with reference to the other facts therein alleged; they do not admit that they intended to commit a fraud, by or in said deed; but whether it was a fraud is to be judged of by the Court, from the deed and the alleged and admitted facts stated in the complaint. And the plaintiff admits the truth of the recitals in the deed; but does not admit that such deed is not fraudulent on its face with reference to the facts so stated. If the Court shall find the trust-deed fraudulent and void on its face, with reference to said other admitted facts, then the judgment shall be for the plaintiff, if the law, upon finding such deed fraudulent and void, authorizes such judgment; but if the Court shall not find the deed fraudulent and void, then the judgment shall be for the defendants. The defendants also reserve the right to claim that said trust-deed is operative as a mortgage, and to have it so adjudged, if the case authorizes such adjudication."

Upon final hearing, the Court found for the plaintiff; and motions for a new trial, and in arrest, having been overruled, it was adjudged that the deed from the company to *Brown* is, as to the plaintiff, fraudulent and void; that the lands therein described are subject to his judgment; and that those levied on, situate in *Jasper* county, be sold by the sheriff without appraisement, etc.

In support of the motion in arrest it is argued, that the

real estate taken in execution, the title to which is directly involved in this suit, being in *Jasper* county, the *Tippecanoe* Circuit Court had no jurisdiction. The code says: "Actions for the following causes must be commenced in the county in which the subject of the action, or some part thereof, is situated : 1. For the recovery of real property, or an estate, or interest therein; or for the determination, in any form, of any such right or interest. 2. For the partition of real estate. 3. For the foreclosure of a mortgage on real property." 2 R. S., p. 33. Does this enactment apply to the case at bar? It is true, as contended, the trust-deed covers lands in *Tippecanoe* county, belonging to the company; but the title to these lands was not at all in issue, because, as a reason for the levy in *Jasper* county, it is alleged in the complaint that the lands in *Tippecanoe* were so largely incumbered that an execution, issued on plaintiff's judgment, and levied upon them, would have been unavailing. Indeed, the object of the suit was to annul the trust-deed, as to the property levied on, and to render the levy of the plaintiff's execution, on that property, effective. As has been seen, the levy was made in *Jasper* county, and the question arises, had the Court, before which this cause was determined, power to decide upon the title, and direct the sale of lands in that county? This inquiry seems to be fully answered by the statutory enactment to which we have referred : "Actions for the determination, in any form, of any right or interest in real property, must be commenced in the county in which the subject of the action, or some part thereof, is situated." The title to the lands levied on, by the plaintiff's execution, no part of which are situate in *Tippecanoe* county, was, plainly, the subject of the present action; hence, the Circuit Court of that county had no power to adjudicate upon the case made by the record.

The deed in question is alleged to be void in law, because it is a general assignment, as to part of the company's

creditors, reserving benefits to the grantor. This position does not seem to be correct. A creditor, in the absence of a statutory prohibition, may, at any time before liens have attached on his property, make a general or partial assignment to a trustee, for the benefit of his creditors, with preferences. Indeed, he may assign the whole of his property for the benefit of a single creditor, in exclusion of all others; or he may distribute, in unequal proportions, either among a part or the whole of them. This seems to be a settled rule of decision. *Grover* v. *Wakeman*, 11 Wend. 187. Burril on Assignments, 117, 118, 119, and cases there cited. Nor does the mere reservation of the surplus, *if any there should be*, to the debtor, vitiate the assignment; " as creditors, not parties, can pursue their remedies against the debtor, following the surplus either in his hands or those of the trustee." *McFarland* v. *Birdsill*, at the present term.

Again: it is insisted that the trust-deed is void *per se*, because it fixes no limit of time within which the trust shall be executed. This position is also untenable. " An omission to limit any time for the assignee to apply the proceeds of the assigned property, is not objectionable, because the law, in such cases, requires it to be done in a reasonable time." *Stevens* v. *Bell*, 6 Mass. 339. *Cunningham* v. *Freborn*, 11 Wend. 241. See, also, Burril on Assignments, 203. We perceive nothing on the face of the deed before us, when viewed in reference to the agreed admission of facts, that leads to the conclusion that it is fraudulent in law or fact. It is true, the suit for the recovery of the plaintiff's judgment was pending when the trust-deed was executed. But the existence of that circumstance is not an available objection to the deed, because we have decided, that " The fact of the pendency of a suit against a debtor, when he conveys his property, is, of itself, no proof of fraud; for he may assign his property after, as well as before, action brought." *Stewart* v. *English*, 6 Ind. 176.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

*H. W. Chase, J. A. Wilstach, S. C. Willson,* and *J. E. Mc-Donald,* for the appellants.

*John Pettit, S. A. Huff,* and *R. Jones,* for the appellees.

NOTE.—This cause was decided in May, 1860, and should have been reported in an earlier volume, but was doubtless omitted by mistake.